NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220791-U

NO. 4-22-0791

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 23, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| GARRETT J. GRUBBS, | ) | No. 19TR1005 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michael L. Stroh, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed defendant's conviction for driving while his license was revoked where the record established that defendant's waiver of counsel was unequivocal, knowing, and voluntary.

¶ 2     Following a jury trial, defendant, Garrett J. Grubbs, was found guilty of driving while his license was revoked (625 ILCS 5/6-303 (West 2020)). The trial court sentenced defendant to 100 days in jail and a $100 fine. Defendant appeals, arguing that his waiver of counsel was not unequivocal, knowing, and voluntary. We affirm.

¶ 3                         I. BACKGROUND

¶ 4     On June 2, 2019, defendant received a traffic citation for driving while his license was revoked. Prior to trial, defendant made several *pro se* filings, including a written plea of not guilty, a jury waiver, and a notice of appearance stating that defendant "appear[ed] before court *** in search of wrong doing [*sic*]."

¶ 5 On the day of trial, November 12, 2019, defendant appeared in court without an attorney. Defendant acknowledged that he executed and understood the documents he filed. The trial court informed defendant that he was charged with driving while his license was revoked on June 2, 2019, on Route 117 near Timberline Drive. The court asked if defendant understood, and defendant responded, "I comprehend the words that you said, but I did not understand." The court asked what defendant did not understand, and defendant responded, "I don't stand under your jurisdiction, but I do comprehend." The court again asked defendant whether he understood the charge, and defendant responded, "No, I do not understand the charges, but I do comprehend though." After the court informed defendant that the offense was a Class A misdemeanor punishable by up to a year in jail and a $2500 fine, the court asked if defendant understood. Defendant responded, "Once again, I do not understand, but I do comprehend."

¶ 6 The trial court then explained defendant's right to a jury trial and asked if defendant understood. Defendant replied that he did not understand but that he did comprehend. The court noted that " 'comprehend' and 'understand' mean the same thing." Defendant responded, "[T]hey do not." The court asked defendant if he was giving up his right to a jury trial. Defendant responded that, since there was no "verified complaint on the record and there is no controversy in the court," he did "not comprehend why [he] was moving forward." Defendant also requested a probable cause hearing. The court explained that, because defendant was charged with a misdemeanor offense, a uniform traffic citation was the appropriate way to bring the charge, and defendant was not entitled to a probable cause hearing. Defendant responded, "My belief [is that] it's required to have a probable cause hearing before we move forward with a trial." The court asked defendant to cite the law supporting his belief, but defendant responded, "I don't have the law on me right now." The court then informed defendant that there was no such law, and defendant responded that he

- 2 -

did not "consent to any of these proceedings." The court stated, "Fine. We will have a jury trial today." Defendant persisted that he "must have a verified complaint for this to continue" and that he had "the right to know who [his] accuser is" before trial. The court explained that the State presented a witness list indicating that Officer Mitchell Stein of the Deer Creek Police Department would be called to testify. The court offered to allow defendant to speak with Stein. Defendant responded, "I don't believe I need to talk to him before the trial since he is not the accuser, and there is no accuser upon the record." The court once again explained defendant's right to a jury trial and how the trial would proceed, then asked if defendant understood. Defendant responded, "I comprehend, but I do not understand."

¶ 7        The trial court informed defendant that he had the right to the assistance of counsel and the correlated right to proceed without an attorney under the sixth amendment to the United States Constitution (U.S. Const., amend. VI). Defendant responded, "I do not believe that that's what it says," explaining, "I believe it says I have the right to counsel, but I do not believe this has anything to do with an attorney." The court noted that, before it could accept defendant's waiver of his right to an attorney, it needed to explain "a few things." Defendant stated that the documents he previously filed "actually state that I am here present today at court and I do not need representation." The court responded that it nevertheless needed "to get it on the record." The court explained that presenting a defense was not a simple matter of telling a story but required adherence to rules governing the conduct of a trial. Defendant responded, "I comprehend, but I do not understand." The court asked defendant if he understood that a lawyer has training in trial procedure and that by proceeding by himself, defendant would not take advantage of the experience of a trial attorney. Defendant responded, "I do not comprehend or understand that," explaining that he did not understand why he "need[ed] an attorney to represent" him. The court

clarified that defendant did not need an attorney but that he had a right to one. Defendant responded, "Okay. I do comprehend I have a right for that, but I do not need an attorney. I'm here present today in court." The court informed defendant that an attorney would be appointed to represent him if he could not afford one. Defendant responded, "I do not wish to have or—for someone to represent me because I'm here present today."

¶ 8        Defendant explained that he is "not familiar with the legal procedure of the United States, but I am familiar with the procedure." Defendant noted that he graduated from high school and attended one year of college. The trial court asked if defendant understood that, by representing himself, defendant "may allow the prosecutor to take advantage by failing to make objections to inadmissible evidence." Defendant responded, "I comprehend, but I do not understand." The court then asked if defendant understood that, by representing himself, he "may make mistakes in questioning jurors." Defendant responded, "Well, once again, I don't need representation. I'm here present today in court." Defendant stated that he did "comprehend" that he might make tactical decisions that produced unintended consequences. When the court asked if defendant understood that he could not complain on appeal about the competency of his representation if he proceeded without an attorney, defendant answered, "Once again, there is nobody representing me." Defendant stated that he did "comprehend" that the court would hold him to the same standard as the State. The court asked defendant if he understood that he would not be allowed to be represented by an attorney if he decided he wanted one once the trial started. Defendant responded, "Once again, I do not need to be represented. I am here before the Court looking for an accuser."

¶ 9        After again informing defendant of the charge and potential sentence, the trial court asked defendant if he wanted to represent himself without an attorney. Defendant responded, "Once again, I think that I have made it clear that there is no need for an attorney or for anybody

- 4 -

to represent me. I'm here present today in court." The court accepted defendant's waiver of his right to an attorney, finding it to be knowingly, voluntarily, and intelligently made. Defendant then stated that he was "not here today representing myself" but that he was "in court searching for my accuser." Defendant then asserted that the trial should not proceed "until there is a verified complaint on the record." The court told defendant to return later in the day for trial and recessed.

¶ 10     When the proceedings continued, the State informed the trial court that defendant made "some more filings" during the recess, noting that "[i]t appears to be all stuff we have already dealt with." Defendant agreed that he "sent these" filings and agreed that they were the same documents he previously filed. The court received the filings, and defendant stated that he was "not ready to proceed until I get verified [*sic*] complaint on the record." Defendant further complained that "probable cause has not been established." The court noted that it had "already ruled on that" and proceeded with the trial.

¶ 11     Throughout *voir dire*, defendant refused to participate, noting that he did not consent to the proceedings because there was no verified complaint or individual accusing him of wrongdoing. Prior to the State's opening statement, defendant noted that he wanted to state "for the record once again that I am not representing myself. If you can explain how to represent myself, then maybe I could understand." The trial court then allowed the State to present its opening statement. Defendant gave no opening statement but noted that he wanted to see a verified complaint and "the person accusing me" of wrongdoing.

¶ 12     The State then introduced a copy of defendant's driving abstract, showing that defendant's license was revoked in June 2019. Thereafter, the State called Officer Stein. Stein testified that he was an officer for the Deer Creek Police Department. Stein was on patrol on June 2, 2019. At 8:23 p.m., Stein observed defendant driving a vehicle on Route 117, a public highway.

Stein knew that defendant "was suspended and revoked," so he stopped defendant's vehicle. Stein testified that when he "ran" defendant, he learned that defendant's license was still revoked. The State introduced a video from Stein's squad car showing the traffic stop of defendant.

¶ 13 The trial court gave defendant an opportunity to question Stein, but defendant refused to do so, asserting that he did not consent to the proceedings because there was no verified complaint and no "probable cause upon the record." For the same reasons, defendant also refused to present any evidence.

¶ 14 During the jury instructions conference, defendant noted that he "comprehend[ed]" the instructions but did not "understand" them. The trial court commented that "defendant likes to play word games with the terms 'understand' and 'comprehend' " and noted that defendant has "been extremely difficult." The court explained that defendant nevertheless "has stated he comprehends these words." Each time the court asked defendant if he had any objection to the instructions tendered by the State, defendant refused to participate. Defendant also refused to present a closing argument.

¶ 15 The jury found defendant guilty of driving while his license was revoked. At sentencing, defendant maintained that he did not consent to the proceedings. The trial court sentenced defendant to 100 days in jail and a $100 fine. This appeal follows.

¶ 16 II. ANALYSIS

¶ 17 Defendant argues that his waiver of his right to counsel was invalid because he did not unequivocally, knowingly, and voluntarily waive that right. Accordingly, defendant asserts that his conviction and sentence should be vacated and the cause remanded for a new trial.

¶ 18 Defendant acknowledges that this issue is not preserved for review, but he asks this court to review it for plain error. See *People v. Khan*, 2021 IL App (1st) 190679, ¶ 81 ("[A]n

objection and a written posttrial motion raising an issue are necessary to preserve an error for appellate review."). We may consider an unpreserved claim if (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence at defendant's trial. *Khan*, 2021 IL App (1st) 190679, ¶ 66. As the right to counsel is fundamental, a claim that there was no effective waiver of counsel may be reviewed under the second prong of the plain-error doctrine. *Khan*, 2021 IL App (1st) 190679, ¶ 66. The first step is to determine whether there was a clear or obvious error. *Khan*, 2021 IL App (1st) 190679, ¶ 66.

¶ 19        A criminal defendant has the right to represent himself in criminal proceedings pursuant to both the United States and Illinois Constitutions. *People v. Burns*, 2012 IL App (4th) 110670, ¶ 11; see also U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. 1, § 8. "The right of self-representation is as basic and fundamental as [the] right to be represented by counsel." (Internal quotation marks omitted.) *Burns*, 2012 IL App (4th) 110670, ¶ 11. To represent himself, however, the defendant's waiver of counsel must be clear and unequivocal. *Burns*, 2012 IL App (4th) 110670, ¶ 11. This requirement prevents the defendant from (1) appealing the denial of his right to self-representation or the denial of his right to counsel and (2) manipulating or abusing the system by going back and forth between his request for counsel and his wish to proceed *pro se*. *Burns*, 2012 IL App (4th) 110670, ¶ 11.

¶ 20        A defendant's waiver of counsel is governed by Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). *People v. Johnson*, 2023 IL App (4th) 210662, ¶ 75. The purpose of Rule 401(a) is to ensure that a waiver of counsel by the defendant is knowingly and intelligently made. *Johnson*,

2023 IL App (4th) 210662, ¶ 76. Rule 401(a) requires the trial court to determine that the defendant understands (1) the nature of the charge, (2) the minimum and maximum sentence, including any penalty to which the defendant may be subject due to prior convictions or consecutive sentences, and (3) that he or she has a right to counsel and to have counsel appointed if indigent. Ill. S. Ct. R. 401(a) (eff. July 1, 1984). Strict, technical compliance with Rule 401(a) is not required. *Johnson*, 2023 IL App (4th) 210662, ¶ 76. Instead, "each case regarding whether there has been a knowing and intelligent waiver of the right to counsel is *sui generis*, requiring an evaluation of the record as a whole, including the background, experience, and conduct of the defendant." *Johnson*, 2023 IL App (4th) 210662, ¶ 76. This court will not reverse the trial court's determination as to whether a defendant has knowingly and intelligently waived his right to counsel unless the trial court has abused its discretion. *People v. Woodson*, 2011 IL App (4th) 100223, ¶ 21. An abuse of discretion occurs when the court's ruling is arbitrary and without a logical basis. *People v. Washington*, 2016 IL App (1st) 131198, ¶ 50.

¶ 21        Defendant makes no claim that the trial court failed to admonish him pursuant to Rule 401(a). Nor does defendant raise any issue with respect to his fitness. Instead, defendant argues that he did not unequivocally, knowingly, and voluntarily waive his right to counsel, because he was confused about the charge and sentence he faced and did not understand his right to counsel. Defendant highlights that he stated that he "comprehended" but did not "understand" the court's admonishments regarding the charge he faced, his right to a jury trial, and his right to counsel. Defendant further notes that he gave contradictory statements regarding whether he was representing himself, as he stated both that there was "no need for an attorney or for anybody to represent" him and that he was "not representing myself." Finally, defendant contends that his lack

of participation at trial supports his claim that his waiver of counsel was not unequivocal or knowing. These arguments are unavailing.

¶ 22 We find *Washington* instructive. In *Washington*, the defendant was charged with first degree murder for shooting and killing the victim. *Washington*, 2016 IL App (1st) 131198, ¶¶ 5, 12. During pretrial, the defendant asked to proceed *pro se*. *Washington*, 2016 IL App (1st) 131198, ¶ 12. The trial court informed the defendant that he was charged with first degree murder and faced a sentence of 20 years to life imprisonment. *Washington*, 2016 IL App (1st) 131198, ¶ 12. The court also told the defendant he had a right to counsel and an attorney would be appointed if he could not afford one. *Washington*, 2016 IL App (1st) 131198, ¶ 12. The defendant told the court that he " 'would like to' " represent himself. *Washington*, 2016 IL App (1st) 131198, ¶ 12. In the following months, the defendant appeared *pro se* and filed multiple motions, including one requesting " 'assistance to assist in my *pro se* defense,' " which was denied. *Washington*, 2016 IL App (1st) 131198, ¶ 15. The defendant also told the court that he was " 'receiving a lot of bias' " and was " 'not getting any assistance.' " *Washington*, 2016 IL App (1st) 131198, ¶ 15. The trial court nevertheless informed the defendant that the case would proceed to trial. *Washington*, 2016 IL App (1st) 131198, ¶ 15. At the next court appearance, the defendant told the court that he wanted to represent himself but also filed another motion seeking assistance, which the court denied. *Washington*, 2016 IL App (1st) 131198, ¶ 16. Several months later, the defendant filed a *pro se* motion for substitution of judge for cause, arguing that he was not " 'qualified to fight' " and that he needed " 'someone to help me present' " evidence. *Washington*, 2016 IL App (1st) 131198, ¶ 17. That motion was denied. *Washington*, 2016 IL App (1st) 131198, ¶ 17.

¶ 23 Immediately before trial, the defendant informed the trial court that he would not participate. *Washington*, 2016 IL App (1st) 131198, ¶ 20. Accordingly, during *voir dire*, the

defendant told the jurors that he was not participating in the trial and objected to " 'everything pertaining to this trial.' " *Washington*, 2016 IL App (1st) 131198, ¶ 21. During the defendant's opening statement, the defendant again noted that he was not participating. *Washington*, 2016 IL App (1st) 131198, ¶ 22. During the State's case-in-chief, the defendant made no objections to any testimony and refused to cross-examine the State's witnesses, noting that he was " 'not participating in these proceedings.' " *Washington*, 2016 IL App (1st) 131198, ¶¶ 23-24. The jury found defendant guilty of murder. *Washington*, 2016 IL App (1st) 131198, ¶ 32.

¶ 24         On appeal, the defendant argued, *inter alia*, that his waiver of counsel was invalid. *Washington*, 2016 IL App (1st) 131198, ¶ 51. The appellate court rejected this argument. *Washington*, 2016 IL App (1st) 131198, ¶¶ 53-54, 56. The court concluded that the trial court substantially complied with Rule 401(a) by informing the defendant that he (1) was charged with first degree murder, (2) faced a sentence of anywhere from 20 years to life imprisonment, and (3) had a right to counsel and that an attorney would be appointed if he could not afford one. *Washington*, 2016 IL App (1st) 131198, ¶ 53. The court then concluded that the defendant's waiver of counsel was valid. *Washington*, 2016 IL App (1st) 131198, ¶ 56. The court noted that after the trial court accepted defendant's request to proceed *pro se*, defendant filed several *pro se* motions. *Washington*, 2016 IL App (1st) 131198, ¶ 56. The defendant then announced that he would not participate in the trial and "proceeded to do just that." *Washington*, 2016 IL App (1st) 131198, ¶ 56. The appellate court noted that the trial court had the opportunity to observe the defendant and "fully assess his ability to understand the proceedings"; the record also indicated that the defendant was "literate, educated, responsive, oriented, and comprehended what was going on." *Washington*, 2016 IL App (1st) 131198, ¶ 56. The appellate court explained that, from the record, it was evident that the defendant knew what he was doing when he waived his right to counsel and

chose to represent himself. Accordingly, the court held that defendant's waiver of counsel was unequivocal, knowing, and voluntary. *Washington*, 2016 IL App (1st) 131198, ¶ 56.

¶ 25 Here, prior to trial, defendant, who graduated high school and attended one year of college, filed several documents, including a notice of appearance stating that he "appear[ed] before court." In accordance with that notice, defendant, on the day of trial, appeared without an attorney. The trial court informed defendant that he was charged with driving while his driver's license was revoked and that he faced punishment of up to one year in jail and a $2500 fine. The court also informed defendant of his right to a jury trial, his right to the assistance of counsel, and the correlative right to proceed without counsel. While defendant repeatedly said that he "comprehend[ed]" but did not "understand" many of the court's admonishments, the court advised defendant that these words "mean the same thing." The court perceived defendant was being "difficult" by engaging in "word games." To the extent defendant argues that "comprehend[ing]" without "understand[ing]" the court's admonishments was evidence that his waiver of counsel was not valid, we reject that argument. "Understand" is defined as "to grasp the meaning of." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/understand (last visited May 2, 2023). Similarly, "comprehend" is defined as "to grasp the nature, significance, or meaning of." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/comprehend (last visited May 2, 2023). The court was in the best position to determine whether defendant was obstructing the proceedings by attempting to differentiate words of the same meaning. Where the court had the opportunity to observe the defendant and "fully assess his ability to understand the proceedings," we will not disturb the trial court's determination that defendant was merely being "difficult." *Washington*, 2016 IL App (1st) 131198, ¶ 56. Further, when there *was* any question as to whether defendant understood his rights, *i.e.*,

when defendant stated that he neither understood nor comprehended an admonishment, the court took care to provide additional explanation until defendant agreed that he did "comprehend."

¶ 26 The trial court also thoroughly explained the risks associated with proceeding without an attorney, including that defendant would need to adhere to rules governing the conduct of a trial, the prosecutor might take advantage of defendant's failure to object to inadmissible evidence, defendant might make a mistake in questioning jurors, and the court would hold defendant to the same standard as the prosecutor. Defendant informed the court that he did "comprehend I have a right" to counsel but that there was "no need for an attorney or for anybody to represent me." The court accepted defendant's waiver of counsel, finding that it was knowingly, voluntarily, and intelligently made. We cannot say that the court's determination was an abuse of discretion. Like *Washington*, the record established that defendant was literate, had some college education, was responsive and oriented, and "comprehended what was going on." *Washington*, 2016 IL App (1st) 131198, ¶ 56. Although defendant did little to represent himself at trial, the record shows that this stemmed not from a lack of understanding of the charge or his right to counsel but from defendant's unwillingness to participate based upon his incorrect belief, despite the court's attempts to convince him otherwise, that a "verified complaint" and probable cause hearing were required. The fact that defendant pursued a poor defense does not mean that he failed to understand his right to counsel or the charge against him. See *Khan*, 2021 IL App (1st) 190679, ¶¶ 69-70 (holding the *pro se* defendant's repeated attempts to dismiss charges against him during trial was not evidence that he failed to understand charges; the defendant simply pursued a "poor defense," believing that charges had previously been dismissed, "and would not accept any explanation otherwise"). "A defendant 'need not himself have the skill and experience of a lawyer

in order [to] competently and intelligently *** choose self-representation.' " *People v. Hood*, 2022 IL App (4th) 200260, ¶ 77 (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)).

¶ 27 Defendant's argument that his seemingly contradictory statements about whether he was representing himself established that he did not understand his right to counsel is similarly unpersuasive. Defendant explicitly told the trial court that he comprehended that he had a right to counsel. Despite the court's extensive admonishments about the risks of proceeding without an attorney, defendant repeatedly assured the court that he did "not need an attorney," that there was "nobody representing me," and that he did "not need to be represented." In accordance with that sentiment, defendant made additional *pro se* filings immediately prior to trial and then refused to participate once trial started. At no point did defendant explicitly or even implicitly request an attorney. We conclude that defendant understood his right to counsel and the effect of waiving that right. See *Washington*, 2016 IL App (1st) 131198, ¶¶ 12, 15, 17, 56 (record on the whole established that the defendant's waiver of counsel was valid despite the defendant's contradictory statements that he " 'would like to' " represent himself but that he wanted " 'someone to help me' ").

¶ 28 Our review of the record establishes that defendant, a literate, oriented, and responsive high school graduate with some college education, understood his right to counsel and grasped what was occurring by waiving that right. Accordingly, we cannot find that the trial court abused its discretion in finding defendant's waiver of his right to counsel to be valid. Therefore, because we find no clear or obvious error, there can be no plain error.

¶ 29                              III. CONCLUSION

¶ 30        For the reasons stated, we affirm the judgment of the trial court.

¶ 31        Affirmed.