2025 IL App (1st) 231551-U

No. 1-23-1551

First Division
December 22, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| v. | ) ) | Nos. 18 CR 13041 & 18 CR 13042 |
| JAMES JOHNSON, | ) ) | |
| Defendant-Appellant. | ) ) ) ) | Honorable Patrick Coughin, Judge, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant's convictions and sentence affirmed where the State proved the charged offenses beyond a reasonable doubt and did not make improper comments in rebuttal. Additionally, the trial court did not err in declining to appoint standby counsel, joining the charges for a single trial, or in admitting evidence. Defendant was also not prejudiced by any cumulative error.

¶ 2   Following a joint jury trial at which he represented himself *pro se*, defendant James Johnson was convicted of two counts of predatory criminal sexual assault (PCSA) and three counts

of aggravated criminal sexual abuse (ACSA). Because defendant was convicted of PCSA against more than one victim, he was sentenced to life in prison. 720 ILCS 5/11-1.40(b)(1.2) (West 2018). Defendant was also sentenced to a consecutive term of 5 years in prison for ACSA. He now appeals, alleging that the State and trial court made numerous reversible errors. For the reasons that follow, we disagree with defendant and therefore affirm his convictions and sentence.

¶ 3                                    I. BACKGROUND

¶ 4      The charges in this case arise from a June 14, 2018, incident in which defendant was alleged to have had inappropriate contact with two of his granddaughters, 8-year-old Lo.S. (Lo.) and 10-year-old La. S. (La.). As relevant here, defendant was charged in case No. 18 CR 13041 with PCSA and ACSA for allegedly touching Lo.'s sex organ with his hand and inserting his finger into the same. Defendant was also charged with PCSA and ACSA in case No. 18 CR 13042 based on the same allegations against La. Additionally, defendant was charged with ACSA for placing his mouth on La.'s breast.

¶ 5      Defendant was represented by private counsel from the time of his arraignment on September 25, 2018, until July 16, 2020. After several months with various public defenders, defendant was represented by a consistent appointed counsel from March 2021 through August 2021. Defendant was then represented by a second appointed counsel from November 2021 to February 2023.

¶ 6      On February 6, 2023, the second appointed counsel informed the court that defendant, who appeared in court via Zoom, now wished to represent himself. The court continued the matter so that defendant could appear in-person to "go over some very important admonishments" so that "there's no miscommunication" about his decision to go *pro se*.

¶ 7    Two days later, on February 8, 2023, defendant physically appeared in court and confirmed that he still wished to represent himself. The trial court admonished defendant on (1) the nature of the charges; (2) the potential penalties, including life in prison; and (3) that he had the right to an attorney free of charge. Defendant stated that he understood each point. Upon questioning from the court, defendant also stated that he was 60 years old, received a GED, and did not have any history of mental illness. Defendant had no legal training and had never represented himself in court before. The court cautioned defendant that he would be required to "adhere to various technical rules" during the trial, and that he would be at a disadvantage against well-trained prosecutors. The court also emphasized that defendant's appointed counsel had substantial trial experience and could assist him in, among other things, selecting a jury, complying with legal procedures, making objections, raising possible defenses, and negotiating a plea deal with the State. Defendant replied that he understood the risks but persisted in his desire to represent himself. The trial court granted appointed counsel leave to withdraw, finding that defendant made a knowing and voluntary waiver of his right to counsel.

¶ 8    On the next court date, February 27, 2023, defendant requested standby counsel "[p]retty much [for] guidance on how to conduct [him]self in court as far as the procedures." When asked for a proffer on the complexity of the case, the State explained that the highest charges were for PCSA against two victims and that it would seek to admit the victims' forensic interviews pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2018)). The State also reminded the court of its pending motion for joinder and stated that further testing was being done to see if it would present DNA evidence. After the State's proffer, the court asked defendant whether there was a specific reason he requested standby counsel "besides just

not being familiar" with legal proceedings. Defendant responded, "Just for the purpose of having some support."

¶ 9    The court denied defendant's request for standby counsel, remarking that it considered the seriousness of the charges, the factual and legal complexity of the case, and defendant's lack of legal experience. The court further reiterated that defendant could receive appointed counsel upon request or hire private counsel at any time. However, defendant remained steadfast in his desire to represent himself.

¶ 10    On March 7, 2023, the trial court held a hearing on the State's motion for joinder. The State's motion argued that joinder was appropriate because the offenses against Lo. and La. were similar in nature, involved the same set of witnesses, and occurred close in time at the same address. In response, defendant, seemingly confused about the nature of the proceeding, argued only that "the dates are off as far as reporting the crime" because "the parents would have come [forward] that same day" to inform the police. According to defendant, it was "unreasonable to even conceive" that both girls were victims "because their parents would have known as far as the dates they put in here and the timing."

¶ 11    After balancing various considerations, the trial court granted the State's motion. In so ruling, the court noted the "similarity of the evidence and the nature of the charges," as well as the allegations that the offenses occurred on the same day at the same location. The court further stated that it considered that if the cases were tried separately, evidence of the other victim's allegations would have been admissible against defendant under either section 115-7.3 of the Code (725 ILCS 5/115-7.3) (West 2018)) or Illinois Rule of Evidence 404 (eff. Jan. 1, 2011).

¶ 12    The parties next litigated the State's motion to admit various statements by Lo. and La. pursuant to section 115-10 of the Code. During a hearing on May 17, 2023, the State presented the

testimony of the victims' parents, Tiffany S. (Tiffany) and Antonio S. (Antonio), as well as forensic interviewer Melissa Lange. The State also played videos of the victims' interviews with Lange.

¶ 13    During cross-examination, the court repeatedly sustained the State's objections and reminded defendant that his questioning had to conform to the rules of evidence and the purpose of the section 115-10 hearing. Defendant asked for "help," explaining that  he had "no idea how to conduct [him]self" in court because he had "never been in a situation like this in [his] life." Outside the presence on any witnesses, the court reminded defendant that he was putting himself at a "severe disadvantage" by not properly cross-examining witnesses or responding to the State's motions. The court again informed defendant that he could have counsel appointed free of charge. However, defendant declined the offer, stating, "No, I don't want appointed counsel." Defendant did not present any evidence at the hearing.

¶ 14    During argument, the State contended that the victims' statements to Lange and their parents were sufficiently reliable because the outcry statements were made quickly and consistently using language appropriate for the victims' respective ages. Defendant argued that, based on his familiarity with the victims, he could "detect that everything wasn't true [that] they said." According to defendant, the victims "looked conflicted" and "as if they were protecting someone and they know the truth."

¶ 15    After hearing the evidence and arguments, the trial court granted the State's motion to admit the victims' outcry statements. The court opined that the statements had sufficient indica of reliability because both Lo. and La. made "nearly spontaneous outcries" with "consistent repetition of the events that happened." The court also stated that the victims appeared genuinely upset, used

age-appropriate terminology, and did not appear to be "coached" or otherwise motivated to make false accusations.

¶ 16    After several unsuccessful motions from defendant, the case proceeded to a jury trial in June 2023. The trial evidence established that Tiffany and Antonio dropped the victims off at defendant's house in Matteson, Illinois around 3:00 pm on July 14, 2018. Tiffany then dropped Antonio off at their home in Chicago before running errands with the couple's eldest daughter, Le. S. (Le).

¶ 17    At defendant's house, La. drew in her notebook at the kitchen table while Lo. played with defendant's dog on the kitchen floor. At some point, defendant entered the kitchen, wrapped his arms around La. from behind, and "started fondling [her] through [her] shirt, touching [her] breast." Defendant then placed his hands inside La.'s shirt, unhooked her training bra, and touched her bare breast with both his hand and mouth. Next, defendant slid his left hand into La.'s pants and underwear, touching her vagina. La. "shut [her] legs so that [defendant] wouldn't go any further," at which point defendant left the kitchen and went back to the living room.

¶ 18    Lo. and La. then went upstairs and locked themselves in the guest room. La. sent Tiffany a text message stating that she felt "sexually harassed" because defendant "put his hands in [her] underwear and he put his hand in [her] bra." However, Tiffany did not immediately see the message because her phone had died. La. also texted Antonio a screenshot of the message to Tiffany, which caused him to call Tiffany and Le. Antonio was eventually able to get their attention by "pinging" Le.'s phone via the "find my iPhone feature." Antonio spoke with Tiffany and told her to "stop whatever [she was] doing and go and get [the] children right away."

¶ 19    Antonio then called the victims on FaceTime and saw that they were "huddled together" and crying in defendant's guestroom. Antonio ended the FaceTime call because Tiffany was

calling the victims. Antonio instructed the victims to stay on the phone with Tiffany until she arrived. Tiffany later arrived and removed the victims from defendant's house. Tiffany testified that defendant was sitting on the stairs with his head in his hands and "just kept saying that he was sorry."

¶ 20    Tiffany further testified that, on the car ride home, La. told her that defendant "put his hand in her shirt and then he put his hand in her underpants." Tiffany also asked Lo. if anyone had "touched here" or "ever done anything like this" to her. Lo. initially shook her head "no," but then pointed at La. and said that "the same person" who touched La. also touched her.

¶ 21    Once back at home, Tiffany and Antonio called the police. They then took the victims to the hospital, where they were examined by Dr. Veena Ramaiah. Dr. Ramaiah testified for the State as an expert in the field of child abuse pediatrics. After obtaining permission from Tiffany and Antonio, Dr. Ramaiah spoke to Lo. alone to ascertain the appropriate course of care. Dr. Ramaiah asked open-ended questions to make Lo. feel at ease and reduce trauma. Lo. told Dr. Ramaiah that nothing had happened to her that day, but that she was previously abused "a long time ago." Based on this disclosure, Dr. Ramaiah decided not to collect a sexual assault kit because too much time had passed.

¶ 22    However, Dr. Ramaiah did perform a physical examination on Lo. During the examination, Dr. Ramaiah noticed that an area of Lo.'s hymen was missing and torn "consistent with sexual penetrating trauma." Dr. Ramaiah explained that this finding was notable because the hymen is a "fairly well protected structure" that is "not easily injured." Based on her observations and experience, Dr. Ramaiah concluded that Lo. was "subjected to sexually penetrating trauma" sometime in the past.

¶ 23    Dr. Ramaiah also interviewed and examined La. Dr. Ramaiah testified that La.'s physical examination was "completely normal" with no visible signs of trauma. However, Dr. Ramaiah explained that sexual abuse often leaves no evidence of physical injury because it is often accomplished through psychological coercion and manipulation. During the interview, La. told Dr. Ramaiah that defendant had kissed her on the left breast that day. Based on this disclosure, Dr. Ramaiah collected a sexual assault kit with Tiffany and Antonio's permission.

¶ 24    The swabs from La.'s sexual assault kit were first examined by forensic DNA analyst Lyle Boicken. He was unable to identify any male DNA on La.'s vaginal swabs. Boicken did identify male DNA on the swab from La.'s left breast, but there was insufficient DNA present to compare it to any known sample. Boicken also identified the presence of male DNA on swabs from La.'s bra and underwear, but was unable to create a profile suitable for comparison.

¶ 25    However, newer available software allowed Katherine Sullivan, the State's other DNA expert, to go beyond Boicken's analysis. Sullivan created a profile from the male DNA on La.'s underwear and found that defendant was included in the approximately three percent of men who could have contributed the DNA. Sullivan also tested the DNA found on La.'s bra and found "very strong support" for the conclusion that defendant was a contributor. Sullivan opined that it was "approximately 9.3 trillion times more likely" that the DNA came from La., defendant, and a third unrelated person than the DNA coming from La. and two unknown contributors.

¶ 26    Finally, Detective Shawn White testified that he interviewed defendant in August 2018 after reading him his *Miranda* rights. The State played various video clips of defendant's statements to Detective White at trial. In the clips, defendant stated that he "went overboard with La[.]" and kissed her bra, underwear, and both of her breasts. Defendant also admitted that on four

or five occasions in the past two years, Lo. would "get on top of [him] and just pelvis grind" over their clothes. Defendant would get an erection and then ejaculate once Lo. got off him.

¶ 27    Defendant rested without presenting any evidence. Lo. did not testify at trial.

¶ 28    At closing argument, the State argued generally that it had proven each element of the charged offenses beyond a reasonable doubt.

¶ 29    Defendant's closing argument is approximately the length of one page of transcript. Therein, he asserted that the prosecution twisted his statements by "word playing." He also stated that, "I'm not a liar. Those kids are not liars. They are protecting people, not just me." Finally, as to the element of sexual penetration, defendant argued that, "Nobody ever proved that. I didn't tell them that. They didn't tell them that. Forensics don't tell them that."

¶ 30    In rebuttal, the State argued in part that:

> "[Defendant] wants you to have Lo[.], 8-year-old Lo[.], who suffered from 6 to 8, to come today and at the beginning of puberty, at 13 years of age, to have to tell this whole room of individuals of adults how her grandfather was forcing her, how her grandfather penetrated her. He says that if you didn't hear it, it didn't happen. Really? We have DNA on one child, and this defendant on the in[ti]mate apparel of La[.]; and we have injury that you heard from the doctor that is without a doubt."

¶ 31    Following deliberations, the jury found defendant guilty of PCSA and ACSA based on contact between defendant's hand and La.'s sex organ. The jury also found defendant guilty of ACSA for putting his mouth on La.'s breast. Similarly, the jury found defendant guilty of PCSA and ACSA based on contact between defendant's hand and Lo.'s sex organ. However, the jury found defendant not guilty on all counts involving penetration of either Lo. or La.

¶ 32    Defendant filed a posttrial motion attacking the sufficiency of the indictment, which was denied.

¶ 33    After a sentencing hearing, the trial court sentenced defendant to terms of life in prison for each count of PCSA, which were to run concurrently. Additionally, the court imposed a five-year sentence for ACSA to run consecutively to his sentences for PCSA.

¶ 34    This appeal followed.

¶ 35                                    II. ANALYSIS

¶ 36                             A. Sufficiency of the Evidence

¶ 37    On appeal, defendant first argues that the State failed to prove him guilty of PCSA against Lo. When a defendant challenges the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *People v. Harvey*, 2024 IL 129357, ¶ 19. Under this standard, we must draw all reasonable inferences in favor of the prosecution. *Id.* Additionally, this court will not retry the defendant or substitute its judgment for that of the jury on questions involving the weight of the evidence or credibility of the witnesses. *People v. Jones*, 2023 IL 127810. A criminal conviction will not be overturned for insufficient evidence unless the evidence is "so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 38    As relevant here, to sustain a conviction for PCSA, the State is required to prove that (1) the defendant caused contact between the defendant's body and the sex organ of the victim (2) for the purpose of the defendant's sexual gratification while (3) the defendant was over the age of 17 and (4) the victim was under the age of 13. 720 ILCS 5/11-1.40(a)(1) (West 2018). Additionally,

at least one Illinois court has held that the contact must be skin-to-skin, rather than over clothing or some other barrier. *People v. Currie*, 2023 IL App (2d) 220114, ¶ 42.

¶ 39    In this case, defendant was convicted of PCSA against Lo. based on touching Lo.'s sex organ with his hand. However, he argues that there was "no evidence" that his hand touched Lo.'s sex organ, let alone that there was skin-to-skin contact. More specifically, he contends that his statements to Detective White show only that he and Lo. engaged in clothed "pelvic grind[ing]" four or five times. Defendant further maintains that Lo.'s statements to Tiffany and Dr. Ramaiah were "too vague" to establish skin-to-skin contact between his hand and Lo.'s sex organ.

¶ 40    We disagree. As the State points out, defendant's admission that he and Lo. engaged in inappropriate pelvic grinding on multiple occasions is strong circumstantial evidence of sexual abuse. Indeed, defendant explained how he would get an erection during the act and ejaculate as soon as they were done. Moreover, Tiffany's testimony established that Lo. indicated that defendant had "touched her" in a similar way to how he touched La. Defendant does not dispute La.'s testimony that he touched her while Lo. watched from the kitchen floor. Defendant's behavior with La. also provides circumstantial evidence with respect to Lo. *People v. Donoho*, 204 Ill. 2d 159, 176 (2003) (State may use evidence of other crimes to establish a defendant's propensity to commit sex crimes under section 115-7.3 of the Code); 720 ILCS 5/115-7.3 (West 2018). Finally, Dr. Ramaiah concluded that Lo. suffered "sexually penetrating trauma" based on reports of abuse and damage to her hymen that was unlikely to have come from some other source. Viewing this evidence in the light most favorable to the State, we find that a rational jury could find that defendant committed PCSA against Lo. beyond a reasonable doubt.

¶ 41                                B. Standby Counsel

¶ 42 Defendant next argues that the trial court erred by denying his requests to appoint standby counsel. Initially, as will become a recurring theme in this appeal, we note that defendant concedes that he has forfeited this issue because he failed to include it in his posttrial motion. *People v. Anaya*, 2017 IL App (1st) 150074, ¶ 50 (to preserve an issue for appeal, a defendant must both object in the trial court and include the matter in a posttrial motion). Nevertheless, he argues that we may review the matter under either prong of the plain error doctrine.

¶ 43 The plain error doctrine is not a "general savings clause," but rather a "narrow and limited exception to the typical forfeiture rule applicable to unpreserved claims." *People v. Johnson*, 238 Ill. 2d 478, 484 (2010). The plain error doctrine allows a reviewing court to address a forfeited claim if a clear and obvious error occurred and either (1) the evidence was closely balanced or (2) the error was so serious that it affected the fundamental fairness of the trial or undermined the integrity of the judicial process. *People v. Sebby*, 2017 IL 119445, ¶ 48.

¶ 44 Defendant argues that the denial of standby counsel is reviewable under the first prong of the plain error doctrine because the evidence on the charges concerning Lo. was closely balanced. He also contends that review is warranted under the second prong of the plain error doctrine because the erroneous denial of standby counsel is akin to a structural error like the denial of the right to counsel. However, before reaching the merits of his argument, we must first determine whether a clear and obvious error occurred in the first place. *Id.* ¶ 49 (first step in a plain error analysis is to determine whether a clear or obvious error occurred).

¶ 45 It is axiomatic that "a defendant who chooses to represent himself must be prepared to do so." *People v. Williams*, 277 Ill. App. 3d 1053, 1058 (1996). Stated another way, a *pro se* defendant does not have a right to standby counsel. *People v. Ellison*, 2013 IL App (1st) 101261, ¶ 42. Although a trial court has the power to appoint standby counsel, the court has broad discretion in

deciding whether to do so in a particular case. *People v. Hood*, 2022 IL App (4th) 200260, ¶ 84. The court's decision on whether to appoint standby counsel will not be reversed absent an abuse of the court's discretion, which occurs only where its ruling is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Id.*

¶ 46 In *People v. Gibson*, 136 Ill. 2d 362, 380 (1990), our supreme court identified three relevant factors for a trial court to consider when ruling on a *pro se* defendant's request for standby counsel: (1) the nature and gravity of the charges, (2) the expected legal and factual complexity of the proceedings, and (3) the defendant's abilities and experience in legal matters.

¶ 47 Defendant argues that the *Gibson* factors demonstrate that he was entitled to standby counsel because he faced serious charges, had only a GED and no significant legal experience, and was required to navigate complex legal issues like joinder, the admissibility of outcry statements, and DNA evidence.

¶ 48 However, we observe that, as this court has stated many times before, "no trial court in Illinois has ever been reversed for exercising its discretion to *not* appoint standby counsel, and this absence of reversals appears consistent with nationwide experience." (Emphasis in original.) *Williams*, 277 Ill. App. 3d at 1061; see also *Hood*, 2022 IL App (4th) 200260, ¶ 86; *People v. Khan*, 2021 IL App (1st) 190679, ¶ 78; *Ellison*, 2013 IL App (1st) 101261, ¶ 42; *People v. Pratt*, 391 Ill. App. 3d 45, 57 (2009). We are not inclined to buck this trend based on the facts of this case. Although we acknowledge that the charges were serious and defendant was unexperienced, defendant exaggerates the factual and legal complexity of this case. The evidence essentially consisted of the victim's outcry statements, defendant's statements to Detective White, Dr. Ramaiah's examinations of the victims, and DNA evidence from two swabs included in La.'s sexual assault kit. While defendant emphasizes the complexity of evidentiary issues and the DNA

evidence, he also does not explain how standby counsel could have helped him navigate these matters any more effectively. See *Khan*, 2021 IL App (1st) 190679, ¶ 75 (where the defendant was intent on pursuing his own strategy, there was "nothing to suggest that standby counsel would have been more effective in changing [the] defendant's mind").

¶ 49    We also note that the DNA evidence, which showed defendant's DNA on La.'s bra and underwear, was cumulative to defendant's confession that he kissed La.'s undergarments and breasts. In any event, the involvement of scientific evidence does not necessarily require the appointment of standby counsel. *People v. Moore*, 2023 IL App (1st) 211421, ¶ 109 (denial of standby counsel to help challenge fingerprint evidence); *Ellison*, 2013 IL App (1st) 101261, ¶ 48 (testimony from forensic chemist).

¶ 50    Additionally, we would be remiss not to mention that the ambiguous role of standby counsel "frequently creates more problems than it solves." *People v. Hui*, 2022 IL App (2d) 190846, ¶ 63. Many of our decisions have held that a trial court can and should consider these potential problems in ruling on a request to appoint standby counsel. *Hood*, 2022 IL App (4th) 200260, ¶ 93 (collecting cases).  Here, the trial court clearly understood the relevant factors and exercised its discretion in denying the appointment of standby counsel. We cannot say that the court abused its discretion in this regard. Because we find no clear or obvious error occurred, we need not proceed further in our plain error analysis. *Sebby*, 2017 IL 119445, ¶ 49.

¶ 51                                    C. Joinder

¶ 52    We now turn to defendant's argument that the trial court erred in granting the State's motion for joinder. A trial court may join two or more charges to be tried together where the offenses could have been brought as a single charge. 725 ILCS 5/114-7 (West 2022). Multiple offenses may be charged in the same indictment where they are based on acts that are "part of the

same comprehensive transaction," (*id.* § 111-4) so long as the joinder would not unfairly prejudice the defendant (*id.* § 114-8).

¶ 53     Although there are no specific criteria to determine what constitutes the same comprehensive transaction, Illinois courts have identified four major factors helpful to this analysis. Those factors include (1) the proximity in time and location of the offenses, (2) the identity of evidence linking the offenses, (3) whether the offenses shared a common method or deisgn, and (4) whether the same or similar evidence would be used to prove the charges. *People v. Fleming*, 2014 IL App (1st) 113004, ¶ 36. A trial court has broad discretion in ruling on a motion for joinder, and a reviewing court will not disturb the trial court's decision on appeal absent an abuse of that discretion. *People v. Nevilles*, 2021 IL App (1st) 191388, ¶ 67. A court abuses its discretion only where its decision is arbitrary, fanciful, or so unreasonable that no reasonable person would adopt the trial court's view. *Id.*

¶ 54     As an initial matter, defendant asserts that he objected to joinder in the trial court. However, the record is not so clear. Defendant did not file a written response to the State's motion for joinder. At the hearing on the State's motion, defendant did not necessarily argue against joinder, stating only that there were "some untruths" in the State's motion and that, "If it was such a predatory criminal act that's being accused, I think the parents would have come that same day, that same morning." Indeed, as previously stated, defendant appeared to be confused about the nature of the hearing. Regardless, defendant concedes that he forfeited the issue by not including it in his posttrial motion. Accordingly, defendant again asks us to review the issue for plain error.

¶ 55     Forfeiture aside, we disagree with defendant that the relevant factors do not support joinder. This court has described the proximity in time and location of the offenses and any overlap in evidence as " 'the most important factors' " in determining whether two offenses were part of the

same comprehensive transaction. *Fleming*, 2014 IL App (1st) 113004, ¶ 41 (quoting *People v. Harmon*, 194 Ill. App. 3d 135, 139-40 (1990)). In this case, the trial court based its ruling in part on the State's evidence that defendant inappropriately touched both victims on the same date and at the same location. On appeal, defendant argues that the trial evidence showed that defendant did not touch Lo. on the same date as La., but rather at some unspecified time in the two years prior. However, as the State points out, the trial evidence was not available to the court at the time it ruled on the State's motion. Thus, this is not a basis to reverse the court's ruling. We also agree with the trial court's assessment that there was significant evidentiary overlap between the offenses. Both cases were proved through the same witnesses and similar outcry statements made at a similar time and location.

¶ 56    We further note that the trial court considered that evidence of defendant's other acts of sexual abuse would have been admissible in separate trials under section 115-7.3 of the Code. See 725 ILCS 5/115-7.3 (West 2018) (providing that evidence of the defendant's commission of PCSA and ACSA are admissible for any relevant purpose where the defendant is charged with PCSA or ACSA). Although the parties dispute the admissibility of some outcry statements at separate trials, defendant concedes that at least La.'s testimony would have been admissible at a separate trial concerning only the charges involving Lo. Under such circumstances, we cannot say that the trial court abused its discretion in granting the State's motion for joinder. In any event, given the admissibility of this evidence at separate trials, defendant has also not shown that he was prejudiced by any misjoinder. *People v. Walston*, 386 Ill. App. 3d 598, 609 (2008) (misjoinder not prejudicial where evidence would have been admissible at separate trials under section 115-7.3). Accordingly, defendant's argument fails.

¶ 57                              D. Admission of Lo.' Statements to Tiffany

¶ 58    Defendant next argues that the trial court erred by admitting Lo.'s statements to Tiffany on the ride home from defendant's house. Specifically, defendant contends that the trial court should not have allowed Tiffany to testify that Lo. claimed that defendant "touched her" in the same way as he touched La.

¶ 59    As with other claims raised on appeal, defendant failed to properly preserve this issue for review. The record shows that defendant neither objected to this testimony at trial nor included the matter in his posttrial motion. Thus, he was forfeited the issue. *Anaya*, 2017 IL App (1st) 150074, ¶ 50. In light of his forfeiture, defendant again asks us to review his claim under the first prong of the plain error doctrine.

¶ 60    Hearsay is defined as "a statement other than one made by a declarant while testifying at trial, which is offered to prove the truth of the matter asserted." *People v. Jones*, 2025 IL App (1st) 230771, ¶ 113 (citing Ill. R. Evid. 801(c) (eff. Oct. 15, 2015)). Hearsay is generally inadmissible at trial unless covered by a statute or rule of evidence. *Id.*; Ill. R. Evid. 802 (eff. Jan. 1, 2011).

¶ 61    In this case, the trial court granted the State's motion to admit Lo.'s outcry statements pursuant to section 115-10 of the Code. However, section 115-10 provides a hearsay exception only if (1) the declarant testifies at trial or (2) is unavailable to testify and there is corroborative evidence of the act that is subject to the hearsay statement. 725 ILCS 5/115-10(b)(2)(a-b) (West 2018). Here, Lo. did not testify at trial and was not ruled to be unavailable. Although a minor declarant may be deemed unavailable based on fear or inability to communicate (*Trinidad C. v. Augustin L.*, 2017 IL App (1st) 171148, ¶ 25), nothing in the record supports a finding that Lo. was legally unavailable to testify. As defendant points out, the only evidence concerning Lo.'s availability was testimony that she was "at home" and "decided against" coming to court for some unspecified reason.

¶ 62 The State does not contend that Lo.'s statements to Tiffany were admissible under section 115-10. Nor does the State appear to contest that Lo.'s statements were admissible under the correlative complaint exception to the hearsay rule, which allows a witness to testify that a victim made a prompt complaint of sexual abuse. *People v. Denis*, 2018 IL App (1st) 151892, ¶ 77. Rightly so, as "[t]he details of the complaint and the *identity of the perpetrator* are inadmissible" under that exception. (Emphasis added.) *Id.*

¶ 63 Instead, the State contends only that any error in the admission of Lo.'s statements was harmless because the jury would have reached the same verdict without the challenged statement. Defendant disagrees, arguing that the evidence was closely balanced such that the exclusion of Lo.'s hearsay statements would have likely tipped the scales of justice in his favor.

¶ 64 We need not determine whether the admission of Lo.'s statements was reversible error, as the larger problem for defendant is that he did not object to the admission of the statement in any way. "It is well-established that the trial court has no duty to *sua sponte* exclude evidence when a party fails to make an objection." *People v. Smith*, 2017 IL App (1st) 143728, ¶ 60. Because defendant failed to object to the admission of Lo.'s statements at trial or in a posttrial motion, he cannot now claim that the trial court erred in admitting the statements. Defendant's argument is therefore unavailing. Where no error occurred, there can be no plain error. *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 16.

¶ 65 D. Admission of Dr. Ramaiah's Testimony

¶ 66 Similarly, defendant also challenges the admission of Dr. Ramaiah's testimony concerning the reasons minor victims of sexual abuse tend to delay disclosure and not exhibit signs of physical injury. Typically, a trial court may allow a witness to testify as an expert if (1) the witness has knowledge and expertise uncommon to laypersons; (2) the testimony would help the trier of fact

understand evidence it might otherwise not, without invading the province of the factfinder to determine credibility and assess the facts of the case; and (3) the testimony reflects generally accepted scientific or technical principles. *In re B.J.*, 316 Ill. App. 3d 193, 200 (2000).

¶ 67    Here, defendant challenges only the second element, *i.e.* that Dr. Ramaiah's testimony was helpful to the jury without invading its province to evaluate witness credibility. More specifically, defendant argues that the trial court should not have allowed Dr. Ramaiah to testify that minor victims often delay disclosing sexual abuse due to threats and psychological manipulation from the perpetrators. According to defendant, the State was able to use the "veneer of [Dr.] Ramaiah's expertise" to bolster Lo.'s credibility even though there was no evidence of threats or coercion in this case. In so arguing, defendant likens his case to *People v. Simpkins*, 297 Ill. App. 3d 668, 682-83 (1998), where this court held that the trial court erroneously admitted evidence that minor victims often recant their allegations due to familial pressure because there was no evidence of such pressure in that case.

¶ 68    The purpose of Dr. Ramaiah's challenged testimony was twofold. First, it explained why the fact that La. did not show physical signs of sexual trauma was not surprising. Second, it explained why Lo. might have delayed disclosing defendant's abuse until La. was also victimized. To the extent that Dr. Ramaiah's testimony explained La.'s lack of injury, this testimony was tied to the evidence and therefore proper. *People v. Atherton*, 406 Ill. App. 3d 598, 617 (2010) (distinguishing *Simpkins*).

¶ 69    To the extent Dr. Ramaiah explained why Lo. might not have immediately come forward with allegations of abuse, this was arguably improper under *Simpkins*. However, we need not decide that issue because defendant did not object to this aspect of Dr. Ramaiah's testimony either. Defendant concedes as much on appeal, again asking us to review the issue under the first prong

of the plain error doctrine. We decline to do so, and instead reiterate that the trial court had no obligation to *sua sponte* exclude the testimony on defendant's behalf. *Smith*, 2017 IL App (1st) 143728, ¶ 60. Accordingly, we do not find that the trial court committed error, let alone plain error.

¶ 70                              E. The State's Rebuttal

¶ 71    We next address defendant's argument that the State made improper comments in rebuttal. Like other issues discussed above, defendant has forfeited his challenge to the State's rebuttal by failing to object at trial and include the matter in his posttrial motion. *People v. James*, 2021 IL App (1st) 180509, ¶ 38. Accordingly, we are again left with considering whether defendant's claim is reviewable under the first prong of the plain error doctrine. The first step in this analysis is to determine whether any error occurred during rebuttal. *Id.*

¶ 72    As a general matter, the prosecution is afforded "wide latitude" in closing arguments, and may comment on the evidence and any reasonable inferences drawn therefrom. *People v. Boston*, 2018 IL App (1st) 140369, ¶ 81. The State may also respond to comments from the defense which clearly invite a response. *Anaya*, 2017 IL App (1st) 150074, ¶ 85. When evaluating the propriety of a closing argument, a reviewing court must view the challenged comments in the context of the argument as a whole. *People v. Sandifer*, 2016 IL App (1st) 133397, ¶ 53. Even improper remarks will not lead to reversal unless they caused the defendant substantial prejudice, meaning that they were a material factor in the defendant's conviction. *People v. Henderson*, 2017 IL App (1st) 142259, ¶ 238.

¶ 73    In this case, defendant challenges the comment that:

"[Defendant] wants you to have Lo[.], 8-year-old Lo[.], who suffered from 6 to 8, to come today and at the beginning of puberty, at 13 years of age, to have to tell this whole room of individuals of adults how her grandfather was forcing her, how her grandfather penetrated

her. He says that if you didn't hear it, it didn't happen. Really? We have DNA on one child, and this defendant on the in[ti]mate apparel of La[.]; and we have injury that you heard from the doctor that is without a doubt."

According to defendant, these remarks (1) "water[ed] down" the State's burden of proof and (2) impermissibly speculated as to why Lo. did not testify at trial.

¶ 74 First, we fail to see how the challenged portion of the State's rebuttal minimized the State's burden. It is not improper for the State to argue that certain evidence is unnecessary where other evidence presented at trial proves the elements of the charged offenses. *People v. Tucker*, 2022 IL App (1st) 172982, ¶ 87. The State's rebuttal plainly argued that it did not need Lo.'s testimony because the charges were proven by other evidence such as defendant's DNA on La.'s bra and underwear, and the damage to Lo.'s hymen suggesting prior sexual penetration. Regardless, we note that the trial court instructed the jury that the State had the burden of proving the charges beyond a reasonable doubt and that closing arguments were not evidence, thus substantially lowering any risk of prejudice. *Boston*, 2018 IL App (1st) 140369, ¶ 103.

¶ 75 Second, to the extent defendant argues that the State improperly implied the reasons for Lo.'s absence, we find these remarks a fair response to defendant highlighting her lack of testimony in his closing argument. We also note that, contrary to defendant's argument on appeal, the State did not offer any "concrete reasons" why Lo. did not testify. See *People v. Camacho*, 2018 IL App (2d) 160350, ¶ 50 (no error where prosecutor's statement that the jury should use their "common sense" to determine why domestic violence victim did not testify against her abuser was susceptible to multiple different inferences). In any event, the court's limiting instructions mitigated any prejudicial effect of the State's isolated comment. *Id.* Under these circumstances, the State's rebuttal does not rise to the level of plain error.

¶ 76                                    F. Cumulative Error

¶ 77    Finally, defendant contends that the cumulative effect of his claimed errors warrants reversal of his convictions and a new trial as to the charges involving Lo. The cumulative error doctrine allows a reviewing court to grant a new trial when individual errors that were not themselves sufficiently egregious to warrant relief nevertheless created an undeniable pattern of unfair prejudice to the defendant. *People v. Kline*, 2024 IL App (1st) 221595, ¶ 83. However, cumulative errors must be extreme, and there is generally no cumulative error where the alleged errors do not amount to reversible error on any individual issue. *People v. Green*, 2017 IL App (1st) 152513, ¶ 118. Additionally, where, as here, the alleged errors were unpreserved, the defendant must show that the errors cumulatively constituted plain error. *People v. Quezada*, 2024 IL 128805, ¶ 58.

¶ 78    As previously explained, however, defendant has not identified any errors in this case. Where multiple errors did not occur, there can be no cumulative error. *Id.* ¶ 46. We therefore reject defendant's assertion of cumulative error.


¶ 79                                    III. CONCLUSION

¶ 80    For the reasons stated, we affirm the judgment of the circuit court.

¶ 81    Affirmed.